**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MELISSA ENTENZA DEAN MILLER,

        Plaintiff,

v.                                                         Case No. 3:19-cv-404-J-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____

**OPINION AND ORDER**[1]

**I.   Status**

    Melissa Entenza Dean Miller ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a Chiari malformation, bilateral stenosis of the transverse sinuses, intracranial hypertension/pseudotumor cerebri, asthma, spinal degeneration, "compression in spine," "tumors in spine," and "fracture in spine." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed June 6, 2019, at 106-07, 122-23, 138, 154, 296 (emphasis omitted). Plaintiff filed an application for DIB on March 6, 2015, alleging a disability onset date of December 1, 2007. Tr. at 251.[2]

_____

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed June 6, 2019; Reference Order (Doc. No. 13), entered June 10, 2019.

[2]    Although actually completed on March 6, 2015, see Tr. at 251, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as March 5, 2015, see, e.g., Tr. at 106.

Plaintiff filed an application for SSI on July 21, 2015, alleging a disability onset date of December 1, 2007. Tr. at 253.[3] The applications were denied initially, Tr. at 105, 106-20, 171-77 (DIB); Tr. at 121, 122-36, 178-81 (SSI), and upon reconsideration, Tr. at 137, 138-52, 184-89 (DIB); Tr. at 153, 154-68, 190-95 (SSI).

On February 1, 2018, an Administrative Law Judge ("ALJ") held a hearing during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 41-103. At the time of the hearing, Plaintiff was thirty-five years old. See Tr. at 106 (indicating date of birth). The ALJ issued a Decision on April 18, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 17-35.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 250. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. at 353-55 (brief). On February 4, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On April 9, 2019, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) "[t]he ALJ's [residual functional capacity ('RFC')] finding fails to account for all the limitations associated with [Plaintiff's headaches]"; 2) "[t]he ALJ erred by drawing unfavorable inferences from, and

---

[3]        Although actually completed on July 21, 2015, see Tr. at 253, the protective filing date of the SSI application is listed elsewhere in the administrative transcript as March 5, 2015, see, e.g., Tr. at 122.

failing to consider the reasons for, Plaintiff's lack of medical treatment," particularly Plaintiff's inability to afford treatment; and 3) "[t]he ALJ failed to [properly] evaluate the opinion evidence [from William Guy, M.D.[4]]" Plaintiff's Memorandum – Social Security (Doc. No. 15; "Pl.'s Mem."), filed August 6, 2019, at 4 (emphasis omitted); see also Pl.'s Mem. at 4-13 (first argument), 13-15 (second argument), 15-24 (third argument). On October 9, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings because the ALJ erred in failing to consider whether Plaintiff's lack of treatment was justified by her lack of insurance.

As discussed below, on remand, a proper consideration of Plaintiff's ability to afford treatment may impact the ALJ's evaluation of Plaintiff's headaches and of Dr. Guy's opinions. If on remand the ALJ finds that Plaintiff's lack of insurance and inability to afford treatment excuses her noncompliance, then the ALJ's evaluation of Plaintiff's headaches (Plaintiff's first argument) and other subjective symptoms may be impacted because in assessing Plaintiff's subjective symptoms, the ALJ relied on Plaintiff's noncompliance, the lack of treatment, and the conservative nature of the treatment. Although Plaintiff's noncompliance was not a significant basis for the ALJ's rejection of Dr. Guy's opinions

---

[4]    Dr. Guy conducted an internal medicine examination of Plaintiff on October 1, 2015, at the request of the Division of Disability Determinations. See Tr. at 528-35.

(Plaintiff's third argument), the ALJ's assessment of his opinions may still be affected due to the subjective nature of Plaintiff's impairments. On the other hand, if the ALJ finds that Plaintiff's noncompliance is not excused by her lack of insurance and inability to afford treatment, the ALJ's findings as to Plaintiff's headaches and Dr. Guy's opinions would not be affected and would be supported by substantial evidence.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 20-35. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date." Tr. at 20 (emphasis and citation omitted). At

---

[5]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

step two, the ALJ found that Plaintiff "has the following severe impairments: Chiari I malformation with bilateral stenosis of the transverse sinuses and intracranial hypertension, a history of asthma, and degenerative disc disease of the cervical and lumbar spine." Tr. at 20 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). Specifically[,] she has the ability to lift, carry, and push/pull 20 pounds occasionally, and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight-hour day; and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day. She can occasionally climb ladders, stairs and ramps, as well as occasionally balance, stoop, kneel, crouch and crawl. She has no limitations regarding manipulation, or communication, but has environmental limitations precluding concentrated exposure to extreme cold, vibration, and work hazards, including unprotected heights and dangerous machinery, and even moderate exposure to respiratory irritants.

Tr. at 21 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing her past relevant work as a Nursery School Attendant." Tr. at 33 (emphasis omitted). The ALJ proceeded to make an alternative finding at step five. After considering Plaintiff's age ("25 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "[r]oute [c]lerk," "[m]arker II,"

and "[t]icket [s]eller." Tr. at 33-34. The ALJ concluded that Plaintiff "has not been under a disability . . . from December 1, 2007[ ] through the date of th[e D]ecision." Tr. at 35 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

- 6 -

## IV.   Discussion

For ease of discussion, the undersigned addresses the issues raised by Plaintiff in the following modified sequence: 1) Plaintiff's noncompliance; 2) Plaintiff's headaches; and 3) Dr. Guy's opinions.

### A.   Noncompliance

#### 1.   Parties' Arguments

Plaintiff contends that "[c]ontrary to unambiguous [SSA] policy, the ALJ did not acknowledge or discuss Plaintiff's inability to pursue recommended treatment due to her lack of insurance and financial situation." Pl.'s Mem. at 14 (citation omitted). According to Plaintiff, "a recurrent theme in the ALJ's [D]ecision" is that Plaintiff's "purported lack of treatment suggests her impairments are not as limited as alleged." Id. at 13.

Responding, Defendant argues that "[t]he record does not support Plaintiff's allegation of inability to afford treatment." Def.'s Mem. at 11 (citation omitted). Defendant asserts that after Plaintiff lost her insurance, she obtained Medicaid and "received excellent care from specialists at UF/Shands." Id. at 11-12 (citations omitted).

#### 2.   Applicable Law

The Regulations provide that noncompliance with prescribed treatment without a "good reason" will preclude a finding of disability. 20 C.F.R. §§ 404.1530(b), 416.930(b). Good reason exists when:

> (1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4) The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. §§ 404.1530(c), 416.930(c). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)) (internal quotation marks omitted).

If the ALJ substantially relies on a claimant's noncompliance in finding that the claimant is not disabled, the ALJ must take into account the claimant's lack of insurance coverage and whether the lack of coverage excuses any noncompliance. See Dawkins, 848 F.2d at 1213-14 (stating that when an ALJ's finding that a claimant is not disabled is "inextricably tied to [a] finding of noncompliance," an ALJ is required to determine whether the claimant's "poverty excuses noncompliance"); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (indicating that "if [a] claimant's failure to follow medical treatment is not one of the principal factors in [an] ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error"); see also Lovelace, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does

not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986) (recognizing that "the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances").

### 3. Analysis

Upon review and for the reasons set out below, the undersigned finds that the ALJ committed reversible error in failing to discuss Plaintiff's lack of insurance, her ability to afford treatment, and whether any such "poverty excuses [her] noncompliance." Dawkins, 848 F.2d at 1213.

By way of background, medical records show Plaintiff was insured through Aetna for some time, see Tr. at 926, 988, but she lost her insurance by the end of February 2014, see Tr. at 429. At some point thereafter, Plaintiff obtained Medicaid. In June 2014, she reported "having difficulty securing an appointment with [a] neurologist because of her coverage by Medicaid only." Tr. at 464 (June 3, 2014 emergency department note). Plaintiff transferred care from Mayo Clinic to UF Health "due to insurance issues." Tr. at 492.[6]

At the hearing, Plaintiff testified on numerous occasions that her lack of insurance has prevented her from obtaining treatment. Plaintiff testified she did not think she has had another MRI of her spine after January 2014 because she lost her insurance "shortly after that," when she got divorced. Tr. at 82-83 (discussing MRI contained in Exhibit 4F); see

---

[6]     The administrative transcript contains duplicates of some medical records. The Court does not cite duplicates in this Opinion and Order.

Tr. at 442-43 (January 2014 MRI contained in Exhibit 4F). She testified she has not "been able to continue care" since. Tr. at 83. Plaintiff testified that she did not follow up with Mayo Clinic after she lost her insurance, but that her physician at Mayo Clinic "sought [her] out" and has been "letting [her] go see him for free." Tr. at 65-67, 84. According to Plaintiff, she has seen him twice since. Tr. at 84. Plaintiff also testified that she is supposed to have blood work done every six months to monitor her pituitary function, but that she has not been able to because she does not have insurance. Tr. at 84-85. Plaintiff stated she thinks she is having issues with her thyroid, but she cannot "go to the doctor and address [her] symptoms and [her] issues" because she has no insurance. Tr. at 85. Plaintiff also asserted she "was on the track to genetic testing" regarding her Chiari malformation, but her "healthcare came to a halt because [she] lost [her] insurance." Tr. at 86. Plaintiff further stated she has not "been able to address" the "tumors that [she] ha[s] on [her] back . . . because [she] ha[s] no health insurance." Tr. at 64.

The ALJ's failure to consider Plaintiff's lack of funds and insurance necessitates remand because the ALJ's finding that Plaintiff is not disabled is "inextricably tied to [a] finding of noncompliance." Dawkins, 848 F.2d at 1213-14. In making the disability finding, the ALJ substantially relied on "the medical record, the course of conservative treatment, the frequency and duration of care, [and] the lack of treatment during the applicable period," Tr. at 33,[7] all of which are intertwined with Plaintiff's ability to afford treatment. Moreover, in evaluating Plaintiff's subjective symptoms and finding them "not entirely

---

[7]     The ALJ also relied on Plaintiff's "own[ ] acknowledged abilities . . . ." Tr. at 33.

consistent" with the evidence in the record, Tr. at 22, the ALJ relied on Plaintiff's noncompliance, the lack of treatment, and the conservative nature of the treatment, Tr. at 32. Indeed, the ALJ stated that "a <u>significant</u> problem with this case is the substantial gaps in medical treatment, from [Plaintiff']s alleged onset date through December 2010 as well as subsequent to October 2016, which further supports a finding that [Plaintiff] is not disabled." Tr. at 32 (emphasis added).

In addressing the record, the ALJ pointed out various instances of noncompliance. For example, referencing April 2015 medical records, the ALJ found that Plaintiff's "non-compliance with recommended imaging indicates [Plaintiff] is not serious about her health or that her symptoms do not rise to a level as to motivate [Plaintiff] to follow up with recommended treatment." Tr. at 28. The ALJ then found that "[n]ot surprisingly, given her lack of treatment, [Plaintiff] continued to report unchanged headaches, blurred vision, and spinal pain." Tr. at 28. As noted above, however, Plaintiff lost her insurance in February 2014, which apparently caused her issues getting the recommended imaging because she testified she did not think she had another MRI of her spine after January 2014 due to her lack of insurance.[8] Also, according to an August 2014 progress note from UF Health, Plaintiff "state[d] EVD placement was planned for measurement of ICP," but "[s]he decided against EVD due to knowledge that she would be transferring care [to UF Health] and her

---

[8]     Eventually, in April 2015, Plaintiff underwent the recommended MRIs of her cervical, lumbar, and thoracic spine. <u>See</u> Tr. at 600-07.

desire for follow up with one provider at one facility." Tr. at 504.[9] As to the "significant problem" of gaps in the record from Plaintiff's alleged onset date (December 1, 2007) through December 2010, the ALJ apparently did not consider that Plaintiff reported in 2008 that she did not have insurance. See Tr. at 1056 (May 2008 medical record from Baptist Medical Center indicating Plaintiff had no insurance).

In sum, the ALJ substantially relied on Plaintiff's noncompliance in finding that Plaintiff is not disabled, but he did not reconcile Plaintiff's noncompliance, conservative treatment, lack of treatment, and frequency of treatment with her lack of funds and insurance. See Dawkins, 848 F.2d at 1213 (finding error when an "ALJ explicitly noted [a claimant's] noncompliance, but did not consider [the claimant's] poverty as a good excuse"). Indeed, the Decision makes no mention of Plaintiff's lack of insurance and funds. In light of the foregoing evidence, the ALJ should have inquired further into whether Plaintiff was able to afford her treatment before holding her noncompliance and lack of treatment against her. See id. at 1214 n.8 (stating that "[t]he burden of producing evidence concerning unjustified noncompliance is on the [Commissioner]"). The ALJ's failure to develop the record in this regard frustrates judicial review because it deprives the undersigned of the necessary facts to make an informed decision. Assuming that the ALJ actually considered Plaintiff's lack of insurance and found that it did not justify her noncompliance and lack of treatment, the Court is nonetheless unable to determine whether this finding is supported by substantial evidence.

---

[9]     "EVD" likely stands for external ventricular drain, and "ICP" likely stands for intracranial pressure.

Defendant's arguments are unavailing as they cannot serve as "post hoc rationalizations for agency actions." Baker v. Comm'r of Soc. Sec., 384 F. App'x. 893, 896 (11th Cir. 2010) (citing Fed. Power Comm'n v. Texaco Inc., 417 U.S. 380, 397 (1974)); see Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. The Court cannot review an assessment of evidence that was never done by the ALJ.

**B.   Headaches and Other Subjective Symptoms**

**1.   Parties Arguments**

Plaintiff contends that "[t]he only RFC limitation that even arguably relates to [her headaches] is that Plaintiff must avoid all dangerous hazards such as dangerous moving machinery and unprotected heights." Pl.'s Mem. at 10 (emphasis omitted). According to Plaintiff, this limitation "is grossly insufficient given the regularity of her severe headaches, the fact that they are exacerbated by activity, and, most critically, simply does not adequately address Plaintiff's need to absent herself during these events." Id.

Responding, Defendant asserts the ALJ properly evaluated Plaintiff's subjective allegations. Def.'s Mem. at 11. Defendant argues that "Plaintiff's contention that she has additional functional limitations due to debilitating intractable headaches is not fully supported by the objective findings from the treating and examining physicians." Id. at 9 (citation omitted).

### 2.   Applicable Law

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that

subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

### 3. Analysis

Plaintiff's argument regarding the ALJ's evaluation of her headaches does not directly challenge the ALJ's assessment of Plaintiff's subjective symptoms, but rather takes

- 15 -

issue with the ALJ's alleged failure to take into account her headaches when formulating the RFC. To determine whether the ALJ's RFC determination was erroneous in this regard, however, the ALJ's assessment of Plaintiff's subjective symptoms must be addressed.

If on remand the ALJ finds that Plaintiff's lack of insurance and inability to afford treatment excuses her noncompliance, then the ALJ's evaluation of Plaintiff's headaches and other subjective symptoms may be impacted because, as noted, in assessing Plaintiff's subjective symptoms, the ALJ relied on Plaintiff's noncompliance, the lack of treatment, and the conservative nature of the treatment. If this is the case on remand, the ALJ should then take into account Plaintiff's headaches in formulating an RFC.

On the other hand, if the ALJ finds that Plaintiff's noncompliance is not excused by her lack of insurance and inability to afford treatment, the ALJ's findings as to Plaintiff's noncompliance, the lack of treatment, and the conservative nature of her treatment would be supported by substantial evidence. Moreover, the ALJ noted earlier in the Decision that "objective imaging has found only minimal Schmorl's nodes deformities and secondary degenerative changes without spinal cord compression or foraminal involvement, and images of [Plaintiff's] lumbar spine were normal, all of which the [ALJ] note[d] would not account for [Plaintiff's] subjective complaints of pain." Tr. at 29; see Tr. at 443 (January 2014 thoracic spine MRI showing "[s]mall chronic inferior T7 and T6 vertebral end plate Schmorl's nodes"); Tr. at 600 (April 2015 thoracic spine MRI showing "[m]inimal Schmorl's nodes deformities and secondary degenerative changes without spinal cord or compression or foraminal involvement"). The ALJ also referred to his previous "notations," which include a number of treatment notes and objective testing showing normal findings.

See Tr. at 22-31; e.g., Tr. at 360-61 (December 2011 progress note indicating Plaintiff reported "feeling well without any specific complaints," and her gait was within normal limits); Tr. at 359 (April 2012 progress note indicating Plaintiff reported "feeling well without any specific complaints" and had normal range of motion in her hips); Tr. at 449 (January 2013 MRI findings indicating that "MRI does not show any evidence of any tumor, mild Chiari malformation"); Tr. at 432 (April 2013 treatment notes showing normal neurological findings, no motor weakness, and no gait disturbance); Tr. at 538-39 (March 2016 brain venogram finding "[n]o evidence of acute venous thrombosis" and "[s]table mild bilateral narrowing of the distal transverse sinuses"); Tr. at 541 (March 2016 brain MRI showing "[n]o acute intracranial abnormality" and "[s]table mild tonsillar ectopia"); Tr. at 849 (March 2016 head angiogram showing unremarkable findings); infra pp. 23-24 (citing treatment notes from 2014 to 2016). Accordingly, if the ALJ finds that Plaintiff's noncompliance is not excused by her inability to afford treatment, his finding that Plaintiff's headaches are not entirely consistent with the evidence would be supported by substantial evidence, and the ALJ would not have erred in not including greater limitations in the RFC.

## C.  Dr. Guy's Opinions

### 1.  Parties' Arguments

Plaintiff argues that in assigning "no weight" to Dr. Guy's opinions, the ALJ "gave no obvious deference to the fact that Dr. Guy actually examined Plaintiff and was the only examining physician to offer an opinion in this case, a factor generally entitling his opinion to greater weight." Pl.'s Mem. at 18 (citation omitted). Plaintiff contends the ALJ's finding that "Dr. Guy's opinion is inconsistent with his own examination findings is simply an

impermissible substitution of the ALJ's lay opinion for that of an examining expert." Id. at 19 (citation omitted). According to Plaintiff, "the ALJ's rejection of Dr. Guy's opinion as 'inconsistent' with the record relied heavily on the ALJ's own speculative inferences regarding medical imaging." Id. at 22 (citation omitted).

Responding, Defendant asserts that "[t]he ALJ noted that Dr. Guy's opinion was inconsistent with objective evidence from Plaintiff's treating and examining specialists." Def.'s Mem. at 12 (citation omitted). In doing so, argues Defendant, "the ALJ thoroughly evaluated the objective evidence from the treating and examining physicians and provided adequate reasons for the weight accorded to the opinion from Dr. Guy, a one-time examining physician." Id. at 13 (citation omitted).

### 2.  Applicable Law[10]

The Regulations establish a hierarchy among medical opinions[11] that provides a framework for determining the weight afforded each medical opinion.   See 20 C.F.R. §§ 404.1527, 416.927.   Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore

---

[10]      On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on or otherwise applicable to the date the claims were filed, unless otherwise noted.

[11]      "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical

- 19 -

opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 3.  Analysis

As noted, Dr. Guy conducted an internal medicine examination of Plaintiff on October 1, 2015. See Tr. at 528-35. In general, Dr. Guy opined that Plaintiff "has moderate to marked restrictions with regard to standing, walking, climbing stairs, bending, lifting, carrying, and kneeling" and "moderate restrictions with regard to sitting." Tr. at 532. He also opined that "[s]he should avoid smoke, dust, and other known respiratory irritants," as well as "activities requiring mild or greater exertion." Tr. at 532.

Pointing to mild findings in treatment notes and in objective imaging results, the ALJ gave "no weight" to Dr. Guy's opinions and found that "Dr. Guy's examination records and the longitudinal treatment records do not corroborate the conclusion of moderate to marked limitations." Tr. at 29-30. The ALJ also cited earlier "notations" in the Decision (which include certain findings regarding noncompliance) in giving no weight to Dr. Guy's opinions. Tr. at 30.

Although Plaintiff's noncompliance was not a significant basis for the ALJ's rejection of Dr. Guy's opinions, the ALJ's assessment of his opinion may still be affected due to the subjective nature of Plaintiff's impairments. On the other hand, if the ALJ finds that Plaintiff's noncompliance is not excused by her lack of insurance and inability to afford treatment, the ALJ's findings as to Dr. Guy's opinions would not be affected and would be supported by substantial evidence for the reasons set out below.

The ALJ accurately noted that "Dr. Guy's testing documents only minimal abnormal findings and no neurological deficits." Tr. at 29; see Tr. at 531, 533 (showing "[c]ranial nerves II through XII are intact," Plaintiff "has no motor or sensory deficit," and there was "no cerebellar deficit noted on examination," although Plaintiff's range of motion in her cervical and lumbar spine was limited due to pain)

The ALJ observed that "despite the reported positive straight leg raises and severely reduced cervical and lumbar ranges of motion due to pain, objective imaging has found only minimal Schmorl's nodes deformities and secondary degenerative changes without spinal cord compression or foraminal involvement, and images of [Plaintiff's] lumbar spine were normal . . . ." Tr. at 29; see Tr. at 443 (January 2014 thoracic spine MRI showing "[s]mall chronic inferior T7 and T6 vertebral end plate Schmorl's nodes"); Tr. at 600 (April 2015 thoracic spine MRI showing "[m]inimal Schmorl's nodes deformities and secondary degenerative changes without spinal cord or compression or foraminal involvement").

The ALJ stated that "testing with the University of Florida . . . documents unremarkable findings (i.e. oriented, well-developed, well-nourished, normal cardiovascular findings, clear lungs, normal ranges of motion throughout, no tenderness, intact neurological findings, no psychiatric abnormalities, etc.)" Tr. at 29-30 (citation omitted); see Tr. at 28-29 (ALJ's summary of treatment notes from the University of Florida Neurology Clinic); e.g., Tr. at 492-93 (June 2014 treatment note indicating Plaintiff's "[c]ranial nerves 2 through 12 are intact except inconsistently reduced sensation of the (R) side of the face," "[f]unduscopic examination revealed bilateral mild to moderate

papilledema," Plaintiff had normal muscle tone, her muscle strength was "at least 4+ out of 5 throughout," and her gait was mildly antalgic); Tr. at 498 (July 2014 treatment note indicating Plaintiff reported worsening neck pain and persisting back pain, but showing that Plaintiff had 5/5 motor strength and a normal gait); Tr. at 525 (June 2015 treatment note showing normal gait and indicating Plaintiff's spine MRIs are "essentially unremarkable"); Tr. at 819 (November 2015 progress note indicating Plaintiff's musculoskeletal exam showed no tenderness); Tr. at 660 (April 2016 progress note indicating Plaintiff had 5/5 motor strength and normal gait); Tr. at 753 (September 2016 progress note indicating lungs have "[c]lear to auscul[t]ation bilaterally, no wheezes or rhonchi, normal effort").

Accordingly, if the ALJ finds that Plaintiff's noncompliance is not excused by her lack of insurance and inability to afford treatment, the ALJ's assessment of Dr. Guy's opinions would be supported by substantial evidence.

### V.   Conclusion

Based on the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)      Reconsider whether Plaintiff's noncompliance with treatment was due to lack of funds and insurance;
>
> (B)      If appropriate, ensure that Plaintiff's other arguments raised in this appeal are considered; and

(C)   Take such other action as may be necessary to resolve this matter properly.

2.   The Clerk is further directed to close the file.

3.   In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 21, 2020.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of Record